UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARILYN CLARK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. Action No. |
| Plaintiff, | ) ) ) | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| vs. | ) ) | JURY TRIAL DEMANDED |
| COMCAST CORP., BRIAN L. ROBERTS, LAWRENCE S. SMITH, JOHN R. ALCHIN, JOSEPH M. DONNELLY AND LAWRENCE J. SALVA, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Comcast Corp. ("Comcast" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal class action on behalf of purchasers of the common stock of Comcast between February 1, 2007 and December 4, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.       The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.       Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and the Company maintains substantial business operations in this District, as detailed herein.

5.       In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.    Plaintiff Marilyn Clark, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Comcast during the Class Period and has been damaged thereby.

7.    Defendant Comcast, together with its subsidiaries, operates as a cable operator in the United States.

8.    (a)    Defendant Brian L. Roberts ("Roberts") is, and was at all relevant times, Comcast's Chairman, Chief Executive Officer and President of Comcast Holdings Corp.

(b)    Defendant Lawrence S. Smith ("Smith") was Comcast's Executive Vice President and Co-Principal Financial Officer until March 28, 2007.

(c)    John R. Alchin ("Alchin") is, and was at all relevant times, Comcast's Co-Chief Financial Officer, Executive Vice President and Treasurer.

(d)    Defendant Joseph M. Donnelly ("Donnelly") was, at all relevant times, Comcast's Co- Principal Financial Officer.

(e)    Defendant Lawrence J. Salva ("Salva") is, and was at all relevant times, Comcast's Senior Vice President, Chief Accounting Officer and Controller.

(f)    Defendants Roberts, Smith, Alchin, Donnelly and Salva are referred to herein as the "Individual Defendants."

9.    As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on The NASDAQ Stock Market ("NASDAQ") and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Comcast's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and

future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Comcast's securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

10.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Comcast common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Comcast's business, operations and management and the intrinsic value of Comcast common stock; (ii) enabled Defendant Roberts and the Company's Chief Operating Officer to sell 585,792 shares of their personally-held Comcast stock for gross proceeds in excess of $15 million; and (iii) caused Plaintiff and members of the Class to purchase Comcast common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the publicly-traded securities of Comcast between February 1, 2007 and December 4, 2007, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

12.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Comcast's stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of

members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Comcast or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

13.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

14.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

15.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Comcast;

(c)     whether the price of Comcast common stock was artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

16.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

17.     Defendant Comcast describes itself the "nation's leading provider of cable, entertainment and communications products and services."

18.     The Class Period begins on February 1, 2007. On that date, Comcast issued a press release announcing its financial results for the fourth quarter and year end of 2006, the period ended December 31, 2006. For the quarter, the Company reported revenue of $7 billion, net income of $390 million, or $0.18 per share and that it added 1.6 million Revenue generating units ("RGUs"). Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> 2006 was simply our best year ever. Powered by our triple play offering and superior products, we added more RGUs than at any other time in our history and reported terrific growth in cable revenue and Operating Cash Flow. This record-setting performance demonstrates substantial operating momentum, and we could not be more enthusiastic about the future. Looking ahead, we are perfectly positioned to continue to offer consumers the best entertainment and communications value proposition available anywhere, and to continue to deliver significant value to our shareholders.
>
> Reflecting our strong results and outlook, our Board of Directors authorized a 3-for-2 stock split – the 11th stock split in our company's history.

The press release also contained earnings guidance stating in pertinent part as follows:

> 2007 Financial Outlook
>
> - Cable revenue growth of at least 12%
>
> - Cable Operating Cash Flow growth of at least 14%
>
> - Cable RGU net additions of approximately 6.5 million, 30% above 2006 RGU net additions of 5 million
>
> - RGU outlook includes an expected decrease of 500,000 circuit – switched phone RGUs

- Cable capital expenditures of approximately $5.7 billion, including commercial services capital expenditures of approximately $250 million

- Corporate and other capital expenditures of approximately $250 million primarily due to the relocation of Comcast's headquarters

- Consolidated revenue growth of at least 11%

- Consolidated Operating Cash Flow growth of at least 13%

- Consolidated Free Cash Flow approximately the same as 2006

19.     Comcast's financial results for the fourth quarter and year end of 2006, the period ending December 31, 2006, were repeated in the Company's Report on Form 10-K filed with the SEC on or about February 26, 2007, which was signed by Defendants Roberts, Smith and Alchin, among others.

20.     On April 26, 2007, Comcast issued a press release announcing its financial results for the first quarter of 2007, the period ended March 31, 2007. For the quarter, the Company reported revenue of $7.4 billion, net income of $837 million, or $0.26 per share and that RGUs increased 1.8 million. Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> We are off to a fabulous start to the year and see increasing momentum as we move ahead. Strong consumer demand for our superior products delivered through our Triple Play offering resulted in another quarter of record performance at our cable division – and we are just getting started capitalizing on the triple play opportunity. This was our 3rd consecutive quarter of record-breaking RGU growth and the 27th consecutive quarter of double digit OCF growth. We are highly confident that our strategy and focus on operational execution and product innovation will deliver great results in 2007 and beyond.

21.     Comcast's financial results for the first quarter of 2007, the period ending March 31, 2007, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about April 27, 2007, which was signed by Defendant Salva.

22.     On May 1, 2007, the Company issued an outline of its growth strategy and prospects from its 2007 Analyst and Investor Meeting.  In that regard, the press release stated, in pertinent part, as follows:

> Brian Roberts, Chairman and CEO of Comcast Corporation, said, "The triple play is driving incredible operating momentum and we see that accelerating as it continues to roll out.  We now expect Comcast Digital Voice penetration to exceed 20% by the end of 2009.  As we have been reporting over the past several quarters, the triple play is increasing the already strong growth of our video and high-speed Internet services – we expect to deliver at least 7 million RGU additions per year through 2009.  The fundamentals of our business are extremely strong and we have never been more enthusiastic about the future of our company."
>
> Comcast's superior products continue to drive significant growth for the Company and will be discussed in detail throughout the day's presentations.  Executives from the Company will discuss the status of the triple play roll out and its accelerating positive impact on RGU additions, operating efficiency and financial results.
>
> *     *     *
>
> The Company believes that its financial performance will remain strong for the next several years:
>
> - Cable revenue projected to grow a compounded average of 12% per year for 2007-2009.
>
> - Cable Operating Cash Flow (OCF) projected to grow a compounded average of 14% per year for 2007-2009.
>
> - Comcast Digital Voice (CDV) projected to reach a penetration level of 20-25% of the Company's available homes passed.

23.     On July 26, 2007, Comcast issued a press release announcing its financial results for the second quarter of 2007, the period ended June 30, 2007.  For the quarter, the Company reported revenue of $7.7 billion, net income of $588 million, or $0.19 per share and that RGUs increased 1.6 million.  Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> We are again reporting double-digit growth in cable revenue, our 28th consecutive quarter of double-digit OCF growth and our fourth consecutive quarter of record-breaking RGU additions.

Demonstrating the appeal of our superior products and our Triple Play package, our cable division delivered 1.6 million RGU additions, 94% above last year's second quarter additions. To achieve this record-breaking performance, we added more than 670,000 Comcast Digital Voice customers and, in just 2 years, have surpassed 3 million digital voice customers. We also successfully completed the immense operational task of deploying an unprecedented 2.1 million digital set-top boxes in the second quarter in advance of a July 1 regulatory deadline.

We are on track for another outstanding year as we continue to execute on our time-to-market advantage. We see cable growth accelerating in the second half of 2007 as we remain focused on delivering superior products and services to our customers.

The press release also contained earnings guidance stating in pertinent part as follows:

2007 Financial Outlook

For 2007, Comcast reaffirms the following previously issued guidance:

- Cable revenue growth of at least 12%

- Cable Operating Cash Flow growth of at least 14%

- Cable RGU net additions of approximately 6.5 million, 30% above 2006 RGU net additions of 5 million

- RGU outlook includes an expected decrease of 500,000 circuit-switched phone RGUs

- Cable capital expenditures of approximately $5.7 billion, including commercial services capital expenditures of approximately $250 million

- Corporate and other capital expenditures of approximately $250 million primarily due to the relocation of Comcast's headquarters

- Consolidated revenue growth of at least 11%

- Consolidated Operating Cash Flow growth of at least 13%

- Consolidated Free Cash Flow approximately the same as 2006

24.     Comcast's financial results for the second quarter of 2007, the period ending June 30, 2007, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about July 27, 2007, which was signed by Defendant Salva.

25.     The statements referenced above in ¶¶18-24 were each materially false and misleading because they misrepresented and failed to disclose the following adverse facts which were known to Defendants or recklessly disregarded by them:

(a)     that the Company was experiencing increased competition from satellite providers and telephone companies which was forcing it to spend more to attract and retain customers, and that this adverse trend was worsening;

(b)     that the Company's level of capital expenditures necessary to upgrade and maintain its technology and equipment was rising beyond internal expectations; and

(c)     as a result of the foregoing, Defendants' positive statements about the Company and their earnings guidance were lacking in a reasonable basis at all times.

26.     On October 25, 2007, Comcast issued a press release announcing its financial results for the third quarter of 2007, the period ended September 30, 2007. For the quarter, the Company reported revenue of $7.8 billion and net income of $560 million, or $0.18 per share. Moreover, the Company reported that RGUs increased 1.4 million. Defendant Roberts, commenting on the results, stated, in pertinent part, as follows:

> Our business continues to perform well both operationally and financially. We once again posted double-digit growth in revenue and operating cash flow, our two most important metrics. In addition, continued strong demand for our products powered our ability to reach 56 million RGUs at the end of the third quarter.
>
> We have transformed our company from a one-product provider of video to become the only company in the world able to offer video, high-speed Internet and phone services to over 40 million households. This provides us with a competitive advantage and will fuel our growth well into the future.
>
> Reflecting our strong confidence in the cash flow generation of our business, our Board of Directors has authorized a $7 billion increase to our stock repurchase program, bringing the total available to $8.2 billion. Our buyback program reflects our continuing commitment to returning capital to shareholders while preserving our financial flexibility and putting us in the best possible position to achieve our strategic and financial goals.

27. Upon this announcement, the price of Comcast common stock fell $2.57 per share, or approximately 11%, to close at $21.28 per share, on heavy trading volume.

28. Then, on December 4, 2007, after the markets closed, the Company issued a press release announcing that Michael Angelakis, Co-Chief Financial Officer, will participate in the 35th Annual UBS Global Media & Communications Conference on December 5, 2007 and discuss the Company's current outlook for 2007. In that regard, the press release stated, in pertinent part, as follows:

> Reflecting an increasingly challenging economic and competitive environment and consistent with trends across the sector, Revenue Generating Units(1) (RGUs) are now expected to increase by approximately 6 million to 57 million, versus previous guidance of approximately 6.5 million additions. This represents a significant increase compared to the 5 million RGUs added in 2006. This RGU growth is expected to contribute to cable revenue growth(2) for 2007 of approximately 11%, compared to previous guidance of at least 12%, cable operating cash flow growth(2) of approximately 13% as compared to previous guidance of at least 14%, and consolidated operating cash flow growth(2) of approximately 13% as compared to previous guidance of at least 13%.

> Cable capital expenditures are expected to be approximately $6.0 billion for the year, a 5% increase from originally issued guidance, reflecting increased advanced digital set-top box purchases, the Company's digital acceleration program, expanded network enhancements and acquisition-related investments.

> Reflecting the impact of all the items described above, Comcast's consolidated Free Cash Flow is expected to be approximately 80% of 2006, compared to previous estimates of 2007 consolidated Free Cash Flow of at least 90% of 2006.

> Except for the items mentioned above, Comcast is reaffirming all previously issued guidance for 2007.

> With the current outlook of 6 million RGU additions, 11% cable revenue growth, and 13% cable operating cash flow growth, 2007 will be a year of record RGU additions and solid financial performance, with the Company enjoying its 8th consecutive year of double digit cable operating cash flow growth.

29. Upon this news, the price of Comcast common stock fell an additional $2.55 per share, or approximately 12%, to close at $18.18 per share, on heavy trading volume.

30. The market for Comcast's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Comcast's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Comcast common stock relying upon the integrity of the market price of Comcast's common stock and market information relating to Comcast, and have been damaged thereby.

31. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Comcast's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Comcast's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Comcast and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## Additional Scienter Allegations

33.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Comcast, their control over, and/or receipt and/or modification of Comcast's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Comcast, participated in the fraudulent scheme alleged herein.

34.     Defendants were motivated to engage in this course of conduct in order to allow Defendant Roberts and the Company's Chief Operating Officer to sell 585,792 shares of their personally-held Comcast stock for gross proceeds in excess of $15 million. The insider shares sold during the Class Period are set forth more fully in the following chart:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| STEPHEN BURKE | 6/4/2007 | 208,000 | $27.15 | $5,647,200 |
| | 6/4/2007 | 27,792 | $27.00 | $750,384 |
| | | 235,792 | | $6,397,584 |
| | | | | |
| BRIAN ROBERTS | 5/25/2007 | 191,875 | $26.80 | $5,142,250 |
| | 5/24/2007 | 158,125 | $27.00 | $4,269,375 |
| | | 350,000 | | $9,411,625 |
| | | | | |
| | Total: | 585,792 | | $15,809,209 |

## Loss Causation/Economic Loss

35.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Comcast common

stock and operated as a fraud or deceit on Class Period purchasers of Comcast common stock by concealing the adverse trends in the Company's business. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Comcast common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Comcast common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages under the federal securities laws.

36. Defendants' false and misleading statements had the intended effect and caused Comcast common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $29.02 per share on July 18, 2007.

37. As a direct result of Defendants' announcements on October 25, 2007 and December 4, 2005, the price of Comcast common stock price fell precipitously. These drops removed the inflation from the price of Comcast common stock causing real economic loss to investors who had purchased the Company's common stock during the Class Period.

38. The collective 23% decline in the price of Comcast common stock after these disclosures came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Comcast common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Comcast common stock and the subsequent significant decline in the value of Comcast common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## Applicability of Presumption of Reliance:
## Fraud on the Market Doctrine

39.     At all relevant times, the market for Comcast common stock was an efficient market for the following reasons, among others:

(a)     Comcast stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, Comcast filed periodic public reports with the SEC and the NASDAQ;

(c)     Comcast regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Comcast was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40.     As a result of the foregoing, the market for Comcast common stock promptly digested current information regarding Comcast from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all purchasers of Comcast common stock during the Class Period suffered similar injury through their purchase of Comcast common stock at artificially inflated prices and a presumption of reliance applies.

## No Safe Harbor

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Comcast who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

42.     Plaintiff repeats and realleges the allegations set forth as though fully set forth herein.

43.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)  engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Comcast common stock during the Class Period.

45.  Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Comcast common stock. Plaintiff and the Class would not have purchased Comcast common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

46.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Comcast common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.  The Individual Defendants acted as controlling persons of Comcast within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had

unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

50. As set forth above, Comcast and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  January 3, 2008               LAW OFFICES BERNARD M. GROSS, P.C.

_____

BERNARD M. GROSS – I.D. NO. 02571

Suite 450, John Wanamaker Building
100 Penn Square East
Philadelphia, PA 19107
Telephone: 215/561-3600
215/561-3000 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

MARILYN CLARK ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

Acquisitions:

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 7/11/07 | 30 shares | $27.93 |
| | | |
| | | |

Sales:

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _28_ day of _December_, 2007.

_____
MARILYN CLARK

- 2 -